UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY GUTIERREZ,

    Petitioner,

               Case No. 21-cv-657-pp

  v.

CHRISTINE SUTER,[1]

    Respondent.

---

**ORDER DENYING PETITIONER'S MOTION TO STAY (DKT. NO. 20), GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 22), DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

---

On May 26, 2021, the petitioner, who was incarcerated at the time he filed this petition and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1. On July 25, 2022, the court dismissed the petition without prejudice due to the petitioner's failure to pay

---

[1] When he filed the petition, the petitioner was incarcerated at Fox Lake Correctional Institution. Dkt. No. 1 at 1. On November 30, 2022, the court received from the petitioner a notice that he had been transferred to Chippewa Valley Correctional Treatment Facility. Dkt. No. 17. Under Rule 2 of the Rules Governing Section 2254 Cases, this order reflects Chippewa Valley Correctional Treatment Facility's warden, Christine Suter, as the respondent. But the publicly available state court docket indicates that on November 7, 2022, the Racine County Circuit Court received notice that the plaintiff had a new address at a supervised living facility in Stanley, Wisconsin. Wisconsin v. Gutierrez, 2013CF000579 (Racine County Circuit Court), available at https://wcca.wicourts.gov. The petitioner did not advise this court of that change of address. And the Wisconsin Department of Corrections locator web site indicates that the petitioner was released from a supervised living facility to extended supervision on July 19, 2023. https://appsdoc.wi.gov/lop/details/detail. The petitioner did not advise this court of that fact, either.

1

the filing fee and file an amended petition by the deadline set by the court. Dkt. No. 10.

Three days after the court dismissed the case, the court received from the petitioner an amended petition. Dkt. No. 12. The following day—July 29, 2022—the court received a letter from the petitioner requesting an extension of time by which to pay the filing fee. Dkt. No. 13. The petitioner told the court that he had mailed his fee with the amended petition on July 19, 2022 but that the paperwork was "delayed and then forwarded" on July 25, 2022. Dkt. No. 14. The petitioner asked the court to accept the untimely filed amended petition and filing fee because he had mailed both items before the July 22, 2022 deadline by which the court told the petitioner it must receive them. Id.

On September 30, 2022, the court re-opened the case, finding that the petitioner had shown good cause for the late filing of the amended petition, that he had made a good faith effort to comply with the court's prior order by putting his materials in the institution's mail system before the court's deadline and that he had shown good cause for the untimely payment of his filing fee as demonstrated by his multiple attempts to make the payment. Dkt. No. 16 at 3-4. The court screened the petition and ordered the respondent to answer or otherwise respond to the petition within sixty days. Id. at 5-10.

On October 14, 2022, the court received from the petitioner a motion to stay the proceedings. Dkt. No. 20. The respondent objected to the motion to stay, dkt. no. 21, and moved to dismiss the amended petition, dkt. no. 22. This order denies the motion to stay, grants the motion to dismiss and dismisses the case with prejudice.

## I.     Background

### A.     State Case

On May 1, 2013, the State of Wisconsin filed a criminal complaint against the petitioner. Wisconsin v. Gutierrez, 2013CF000579 (Racine County Circuit Court), available at https://wcca.wicourts.gov

#### 1.     *The Petitioner's Motions*

The public docket for the case shows that on February 7, 2014, the petitioner filed two motions—a "Franks/Mann motion" and a "Motion to Suppress the Fruits of a Warrantless Search." Id.

The respondent provided this court with a copy of the petitioner's February 7, 2014 "Motion to Suppress the Fruits of a Warrantless Search," in which the petitioner asked the Racine County Circuit Court for an evidentiary hearing "as to whether or not the police conducted an unreasonable search." Dkt. No. 23-1 at 1. In that motion, the petitioner argued that the police had "unreasonably searched the Defendant's duffel bag without a warrant . . . ." Id. He asked the court to suppress the evidence that resulted from that search. Id. In the February 7, 2014 motion, the petitioner argued that on April 26, 2013, the Racine Fire Department and Racine Police Department had responded to a report of a house fire at a residence on Parkview Drive in Racine. Id. at 1. He asserted that as the "Racine Fire Department" "entered the stairs to the upper unit with their fire hose," the "Racine Fire Department" threw a duffel bag over the back porch railing; the defendant asserted that the duffel bag had been located just inside the door of the upper unit, "on the first floor landing, blocking the stairwell leading to the upper unit." Id. at 1-2, ¶2. He asserted that two police officers canvassing the area around the home found the closed, dark duffel bag in the backyard of the Parkview residence. Id. at 2, ¶3. Without

3

obtaining a warrant, the officers opened the bag and "discovered six vacuum-sealed bags of a 'green leafy vegetable like substance,' which was later confirmed to be marijuana." Id. at 2, ¶4. The petitioner argued that he had a reasonable expectation of privacy in the duffel bag, even though the fire department had removed it from the residence; he argued that the bag was on the curtilage of the residence and that the officers opened the bag without a warrant. Id. at 3, ¶7. The defendant argued that the officers had violated his Fourth Amendment right to protection against unreasonable searches and seizures by opening and searching the bag, located in his backyard, without a warrant. Id. at 3, ¶8. The petitioner requested an evidentiary hearing. Id. at 3.

As the court noted, the state docket reveals that the petitioner filed a second motion on February 7, 2014, which the docket calls a "Franks/Mann motion." The respondent did not provide this court with a copy of that motion. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that to mandate an evidentiary hearing on an attack on the validity of the affidavit supporting a search warrant, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. at 171. In Wisconsin v. Mann, 123 Wis. 2d 375, 386 (Wis. 1985), the Wisconsin Supreme Court extended the Franks rule to motions alleging that evidentiary facts had been omitted from a search warrant affidavit. Although this court does not have a copy of the petitioner's February 7, 2014 Franks/Mann motion, other evidence in the record indicates that the motion alleged that the affidavit in support of the search warrant for the residence where the fire occurred did not include certain material facts.

4

2. *The State's Response*

On February 26, 2014, the State of Wisconsin filed a single brief opposing both the petitioner's motion to suppress and his <u>Franks/Mann</u> motion; the respondent's opposition brief was titled "State's Challenge to Defense Motions to Suppress." Dkt. No. 23-1 at 5-17. As the title indicates, this pleading addressed the defendant's motion regarding the duffel bag, but it also addressed an affidavit in support of a warrant to search the residence on Parkview Drive. The State recited the facts as follows:

> On April 26, 2013 officers from the City of Racine Police Department as well as firefighters, paramedics and other personnel were dispatched to 421 Parkview Dr. with regards to a residential fire. Officers from the Racine Police Department arrived first, quickly followed by several pieces of fire apparatus. Engine 1 was first on the scene. Their responsibility was to make entry and combat the fire. Lt. Bruce Johnson noted that the smoke coming from the house was an unusual color. Lt. Johnson went around to the back of the residence and assisted dragging a hose to the rear of the home. Other members of his Engine crew made entry into the residence. As firefighters were entering the residence they encountered citizens that had entered the home to check and see if it was occupied. Those citizens were later interviewed and indicated that they had kicked in the door to make entry into the upper unit. As Lt. Johnson was at the rear of the home he was advised by other members of his crew that there was a drug lab in the home. Firefighters immediately backed out.
>
> Truck 1 was the second fire vehicle there. They set up immediately in front of the home to best use their equipment. A determination was made by Fire Department command staff that the home had to be re-entered to check for occupants. The Truck company made entry by way of the front window. Lt. Johnson recalls that when they went up on the porch the second time that he observed a black duffle bag sitting right outside the door as if it had been pushed aside. Firefighter Duston Chacon was a member of the Truck 1 crew. When the truck arrived he was given the task of getting the hose up the back steps. Chacon recalls that there was a bag sitting on the porch and that the bag kept catching the hose as they were trying to drag the charged fire hose around the corner and up the steps. Chacon grabbed the bag and flung it out into the yard to get it out of the way.

5

Lt. Jeffrey Baugrud was the Captain on Engine 2. Upon their arrival Engine 1, Truck 1, Med 1 and the command car were already there. Their crew was given the task of running a second hose from a hydrant to Engine 1. By the time he got to the residence, he was met by the crew of Engine 1 who were exiting the residence and advising that there was a lab inside. Baugrud erected a ladder on the front of the house and broke out the windows to assist in ventilation. He noted that there was black plastic inside of the window which was somewhat unusual. When they accessed the upper unit from the front window they noted a burn mark on the carpeting on the floor as well as all kinds of chemicals and laboratory type equipment all around. Baugrud indicated that they were so concerned that they did not even bring a hose up with them. The firefighter's concern was that if they used a charged hose to put out the fire that they might unintentionally create an unwanted chemical reaction that would only make things worse. The firefighters wanted to preserve the scene as much as possible just to keep it safe. Baugrud stamped on the fire to put the fire out. Firefighter Jose Carbajal also entered through the window on the front of the home and assisted with stamping on the fire to put it out. The firefighters then searched the home to ensure that there were no persons present and exited the home. Carbajal observed numerous five gallon buckets stacked up, beakers and other laboratory type equipment.

Officers Nicholas Seeger and Christopher Kupper were the first police officers on the scene. Once the firefighters had put the fire out and ventilated the home the officers were escorted upstairs where they also observed the laboratory equipment. Both officers concurred with the opinion of the firefighters that some type of laboratory for manufacturing illicit substances was present in the apartment. As the officers were canvassing the area around the home they observed a large black duffle bag laying in the northwest corner of the property, just beyond the back porch accessing the door to the upper unit. As both Officer Seeger and Officer Kupper came upon the bag they immediately noted the strong odor of fresh unburned marijuana coming from the bag. Officer Kupper opened the bag and noted that it contained several large vacuum sealed bags containing a green leafy substance.

Inv. Mark Sorensen was also contacted relatively quickly as Inv. Sorensen has experience as both a drug investigator as well as an arson investigator. Inv. Sorensen met with fire personnel on scene and was advised of what was observed in the upper unit. Inv. Sorensen asked Battalion Chief Willie Hargrove if it would be possible for him to enter the residence. BC Hargrove advised Inv.

6

Sorensen that because he did not have the full protection of a firefighter's turnout gear that he would not be allowed to enter. Lt. Peterson was standing nearby and advised Inv. Sorensen that he was still in his gear. He would enter the upper unit and, utilizing the officer's cell phone camera, take several pictures of the inside. When Lt. Peterson returned Inv. Sorensen reviewed the pictures taken and concluded that the firefighters were correct in their assessment that there was a clandestine drug lab inside of the dwelling. Lt. Perterson [sic] did not take any items from the upper residence nor did he even move them to better photograph them. Inv. Sorensen then prepared a search warrant for the upper and lower units of the dwelling.

Id. at 5-8.

As to the affidavit in support of the warrant to search the residence, the State argued that when Peterson went into the residence with Sorensen's cell phone to take photos of "what firefighters and officers had already observed," there was neither a search nor a seizure. Id. at 11. It argued that the defendant had not made the substantial preliminary showing necessary to justify an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978) and Wisconsin v. Mann, 123 Wis. 2d 375 (Wis. 1985). Id. at 11-12. The State argued that the photographs were not the product of an unreasonable search, and that even "without the contested statement," the search warrant still contained probable cause to support a search. Id. at 12. It asserted that paragraphs three and four of the affidavit—which contained the information Sorensen received from the firefighters who'd been in the residence—were enough to constitute probable cause. Id. at 12-13.

The State also argued that the defendant did not have standing to contest the search of the residence because he had no property interest in it. Id. at 14. It argued that there was no furniture or personal property in the residence and that "Mr. Schoedel" (the home's owner and the petitioner's uncle) did not know that the petitioner was using the upper unit to manufacture controlled substances and had not consented. Id. at 8-9, 15.

7

As to the duffel bag, the State argued that the fire and police departments had an "obligation" to determine if it contained hazardous materials and that they didn't know who it belonged to. Id. at 15-16. They asserted that the officers had probable cause to search the bag due to the odor of marijuana, and asserted that the officers were entitled to determine whether it contained hazardous materials. Id. at 16. The State asserted that the officers had probable cause to search the bag under the "plain smell" doctrine, citing State v. Washington, 134 Wis. 2d 108 (Wis. 1986). Id.

        3.    *The Petitioner's Reply*

The petitioner disputed the State's arguments. Id. at 18-24. He asserted that Peterson's entry into the apartment to take photos was outside the scope of the warrant exception because law enforcement officers were not allowed to enter the unit without proper fire gear. Id. at 19. He argued that "[i]t was outside the scope of Lt. Peterson's fire investigation to enter into the upper unit to take photographs at the direction of Investigator Sorenson." Id. The petitioner maintained that the photographs comprised an unconstitutional search and seizure. Id. And he contended that Sorensen's instruction to Peterson to re-enter the residence to take photos with Sorensen's phone was a new search. Id. at 20.

The petitioner argued that the warrant to search the residence was based on information illegally obtained through an unlawful search—presumably the photos. Id. He asserted that Sorensen had "neglected to include the material fact that the photographs were the product of the illegal search" in the warrant affidavit, and that this fact satisfied his substantial preliminary burden to obtain an evidentiary hearing. Id. at 20-21.

As for the petitioner's reasonable expectation of privacy, the petitioner argued that he'd been granted access to the home by his uncle for the purpose of caring for the residence, and that he had secured the residence by locking the door. Id. at 22. He asserted that he was legitimately on the premises "and was exercising complete dominion and control over the premises while his uncle was hospitalized." Id. at 23. He asserted that as an "overnight guest of the residence," he had a reasonable expectation of privacy in the residence." Id. at 24. The petitioner argued that he also had a reasonable expectation of privacy in the duffel bag because the duffel bag was found "within the curtilage of the home." Id. at 22. He maintained that the fact that he did not "indicat[e] a possessory interest in the bag or in the contents of the bag . . . [did] not defeat his right to privacy with regards to the bag nonetheless." Id.

4.    *Argument on the Petitioner's Motions/Rulings*

On March 24, 2014, the circuit court held a hearing on both the Franks/Mann motion and the motion to suppress. Id. at 25. At the hearing, the parties clarified that the Franks/Mann motion concerned the search warrant for the premises and the motion to suppress concerned the search of the duffel bag. Id. at 26. The petitioner's attorney, Patrick Cafferty, argued that the petitioner had standing to challenge the search of the residence because he had stayed as an overnight guest at the residence. Id. at 28. Attorney Cafferty argued that once the petitioner's standing was established, "the issue then becomes where did the bag come from, who threw it out. What did the—what did—where exactly did the fire fighters find it. Why did they throw it out. Was it somebody else who threw it out. Was it an effort by fire fighters to throw it out to help law enforcement." Id. Counsel asserted that those issues would be addressed at the evidentiary hearing he requested. Id.  Attorney Cafferty

9

further argued that it strained credulity to believe that police officers at the scene of a fire—a fire which produced smoke—could detect the smell of marijuana coming from a bag. Id. at 32.

As to the petitioner's Franks/Mann motion, Attorney Cafferty argued that there were no exigent circumstances justifying the firefighters in investigating the residence because the fire was out. Id. at 28-29. Attorney Cafferty argued that the firefighters were not acting independently when they went inside and collected photographic evidence; he asserted that they were acting at the direction of law enforcement—Investigator Sorensen—and maintained that once the information they collected ended up in the search warrant affidavit it tainted the probable cause finding. Id. at 29. Attorney Cafferty asserted that the petitioner was entitled to an evidentiary hearing on the Franks/Mann motion to establish the exact sequence of events—when the fire went out, the duties the firefighters performed and who directed the firefighters to perform those duties. Id.

As to the Franks/Mann motion, the circuit court concluded that the petitioner was alleging that the paragraph referencing the photos was the paragraph involving alleged false swearing or information provided with reckless disregard for the truth. Id. at 34. Looking at the totality of the circumstances, the court found that the information in paragraphs three and four would have been enough to establish probable cause even if the information about the photographs had been redacted. Id. The court concluded that the petitioner had not made a preliminary showing that the information in the affidavit was provided with reckless disregard or with an intent to confuse the issuing judicial officer. Id. at 35. For those reasons, the court concluded

that the petitioner had not made the substantial preliminary showing required under Franks/Mann, "and there is no need to go further on that issue." Id.

The circuit court then turned to the search of the duffel bag. Id. The court denied the motion to suppress the evidence obtained from the duffel bag, providing the following reasoning:

> The circumstances I find is that the investigation of the duffel bag not only the fact that they had the smell of marijuana which in my mind gives them a probable cause, but when I look at the totality which includes the chemicals, and the safety risk associated with the chemicals that the overall exigent circumstances for that property and securing the property which includes the curtilage which is this bag gave the officers the right to search that bag without a warrant.

> Looking at the totality in what I would deem to be exigent circumstances as part of the overall safety issue of securing this property I think it goes without saying that the chemicals not only posed a risk because the officers and the fire fighters that were present, but it also posed a risk to the public in general and as such in the interest in my opinion of the society at this point far outweighed the need for a search warrant under these circumstances. And as such I'm going to find that the search of the duffel bag was legal and that the officers under the totality not necessarily not under the plain view, but under the exigency and you probably could apply the community caretaking function an emergency function as an exception to the warrantless search.

Id. at 37-38.

### 5. *Resolution of the Case*

On August 11, 2014, the petitioner pled no contest to felony possession with intent to sell marijuana, felony manufacturing/delivering designer drugs and second-degree reckless endangerment. The court sentenced the petitioner to eleven years of initial confinement followed by eleven years of extended

Case 2:21-cv-00657-PP   Filed 09/19/23   Page 11 of 29   Document 25

supervision. <u>Wisconsin v. Gutierrez</u>, 2013CF000579.[2] The court entered judgment on December 12, 2014. <u>Id.</u>

      6.    *Appeal*

On January 12, 2017, the petitioner's appellate counsel filed a no-merit notice of appeal and no-merit report, which the court of appeals rejected on February 7, 2018. <u>State v. Gutierrez</u>, Appeal No. 2016AP001340-CR (available at https://wscca.wicourts.gov/). On or around September 13, 2018, the petitioner filed an appeal of his judgment of conviction to the Wisconsin Court of Appeals. Dkt. No. 23-2 at 1-18. The petitioner argued that State did not meet its burden to support the warrantless search of the duffel bag, asserting that the duffel bag was illegally seized and searched without a warrant and that he was entitled to an evidentiary hearing on his motion to suppress the evidence recovered from the bag. <u>Id.</u>

On December 26, 2019, the court of appeals affirmed the circuit court's denial of the suppression motion without an evidentiary hearing. Dkt. No. 23-3. Finding that the fire-damaged premises and a high risk of explosion called for "emergency assistance," the court concluded that the warrantless search of the duffel bag "was justified by the emergency doctrine, which merits '[l]aw enforcement officers [to] enter private premises . . . to preserve life or property, to render first aid assistance, or to conduct general inquiry into an unsolved crime.'" <u>Id.</u> at 4 (quoting <u>State v. Kraimer</u>, 99 Wis. 2d 306, 314 (Wis. 1980)). In reaching its conclusion, the court also found that "[t]o the extent the removal of the duffel bag from the porch caused a meaningful interference with [the

---

[2] The docket indicates that on August 5, 2015, the state court corrected the sentence to eleven years of initial confinement followed by ten years of extended supervision.

petitioner's] possessory interest, any 'seizure' was reasonable under the circumstances. Id. at 5.

The court also held that the circuit court properly exercised its discretion in denying the petitioner's motion to suppress without an evidentiary hearing. Id. at 6. Citing to State v. Radder, 382 Wis. 2d 749 (Wis. Ct. App. 2018), the court explained that "a hearing is only warranted when a movant can, at the very least, show a reasonable possibility that a hearing is needed to allow the defendant to establish the necessary factual basis to succeed on the motion." Id. at 5-6. Recognizing that the petitioner had questioned whether the officers could actually smell the marijuana in the duffel bag, the court explained that both it and the circuit court had deemed that factual dispute irrelevant because "the bag was opened as part of a coordinated emergency response to an ongoing public danger." Id. at 6. The court stated that even if it had accepted as true that the duffel bag was on the curtilage, that it did not emanate a plain smell of marijuana and that the police were not on the property at the request of the firefighters, the petitioner had not shown that he was entitled to an evidentiary hearing. Id.

On May 19, 2020, the Wisconsin Supreme Court denied the petitioner's petition for review. Dkt. No. 23-4 at 18.

B.    Federal *Habeas* Petition (Dkt. No. 12)

The petitioner's amended federal *habeas* petition asserts four grounds for relief: (1) "Motion to suppress 'the fruits of warrantless search' police unreasonably searched defendants duffel bag without a warrant in violation of 4th Amendment of the United States," dkt. no. 12 at 6; (2) "Franks/Mann motion probable cause to grant search warrant," id. at 7; (3) "Motion for postconviction relief courts relied on inaccurate information at sentencing,

erronious [sic] determination of the facts," id. at 8; and (4) "Excessive sentencing unfit for courts 2019 WI 51 State Judicial Comm'n v. Piontek Supreme Court of Wisconsin May 21 2019 No. 2018AP1033-J," id. at 9.

Grounds One and Two raise allegations of Fourth Amendment violations. In Ground One, the petitioner argues that the police unreasonably searched his duffel bag without a warrant; in Ground Two, he argues that "the affidavit in support of the search warrant included misleading facts, which if not included, would not have established probable cause to issue a search warrant." Id. at 6-7. In its Rule 4 Screening Order, the court recounted that a federal *habeas* court is barred from reviewing Fourth Amendment claims that were fully and fairly litigated in the state courts, but nonetheless allowed the petitioner to proceed on Grounds One and Two, explaining that at the screening stage, it could not determine whether the petitioner had had such a full and fair opportunity to litigate the claims. Dkt. No. 16 at 7.

The court interpreted Ground Three—the claim about erroneous information at sentencing—as a due process claim. Dkt. No. 16 at 8. The court construed Ground Four as raising an Eighth Amendment violation. Id.

## II.     Motion to Stay (Dkt. No. 20)

### A.     The Parties' Arguments

On October 14, 2022, the petitioner filed a motion to stay his federal *habeas* proceedings. Dkt. No. 20. The petitioner explained that he was preparing a "new evidence motion" under Wis. Stat. §974.06. Id. The petitioner indicated that if the Wisconsin circuit court ruled against him, he intended to amend his federal *habeas* petition to include a new evidence claim. Id.[3]

---

[3] There is no indication in the state court docket that in the past year, the petitioner has filed a "new evidence" motion, or a post-conviction motion under

The respondent opposed the motion. Dkt. No. 21. The respondent argued that the petitioner was attempting to invoke <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), but hadn't argued that he met its requirements. <u>Id.</u> at 1. The respondent raised three arguments for denying the motion to stay. First, the respondent argued that the petitioner had not shown good cause for failing to exhaust his new evidence claim. <u>Id.</u> Second, the respondent contended that the petitioner's claim was "plainly meritless, because such a claim is not cognizable in habeas corpus." <u>Id.</u> (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 400-05 (1993)). Finally, the respondent argued that the petitioner had engaged in "dilatory litigation tactics" by failing to indicate that he intended to bring a new evidence claim in state court until seventeen months after filing his federal *habeas* petition. <u>Id.</u> The respondent also indicated that she intended to file a motion to dismiss (which she later did, Dkt. No. 22). <u>Id.</u> at 2.

B.   <u>Analysis</u>

The court has the authority to stay and hold in abeyance the proceedings in a federal *habeas* case that involve unexhausted claims while a petitioner returns to the state court to exhaust his state remedies on the unexhausted claims. <u>Rhines</u>, 544 U.S. at 276-77. But "[s]tay and abeyance should be available only in limited circumstances." <u>Id.</u> at 277. It is appropriate only "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and even then, not if the petitioner's unexhausted claims are "plainly meritless." <u>Id.</u> On the other hand, a district court abuses its discretion in denying a stay and dismissing a "mixed" petition—one containing both exhausted and unexhausted claims—

---

Wis. Stat. §974.06. It shows only that he has filed petitions for sentence adjustments.

where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in dilatory litigation tactics." Id. at 278. The Supreme Court has instructed district courts that they should not stay mixed petitions "indefinitely," and "should place reasonable time limits on a petitioner's trip to state court and back." Id. at 277-78.

The petitioner has not argued that his petition is a "mixed" petition that contains both exhausted and unexhausted claims. The original, May 26, 2021 petition raised a single ground for relief: that the search and seizure of the duffel bag violated the petitioner's Fourth Amendment rights and that the court should remand the case to the state court for an evidentiary hearing on his motion to suppress the evidence recovered from the bag. Dkt. No. 1. The July 17, 2022 amended petition (received by the court on July 28, 2022) raised the four grounds for relief the court discussed above. Dkt. No. 12. The petitioner prepared the amended petition on the court's form, which asks as to each ground, "If you did not exhaust your state remedies . . ., explain why." Id. at 7-9. As to the first three grounds, the petitioner wrote, "I didnt know how to address certiorari in Supreme Court and deadline expired." Id. at 7-8. As to the fourth ground, the petitioner wrote, "Not sure this has all come to surface to me recently by doing law research when I filed for ERP[4] on drug cases because Piontek[5] never gave me ERP." Id. at 9. The petitioner has not asked the court to allow him to return to state court to exhaust any of the claims raised in the

---

[4] Earned Release Program.

[5] The public record for the state case indicates that Judge Michael J. Piontek presided over the petitioner's December 11, 2014 sentencing hearing. State v. Gutierrez, Case No. 13CF000579.

original or the amended petition. The respondent raised the <u>Rhines</u> case in opposition to the motion, but because the petitioner is not seeking to return to state court to exhaust unexhausted claims that he already has raised in the federal *habeas* proceeding, <u>Rhines</u> does not apply.

Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a *habeas* petition must "specify all the grounds for relief available to the petitioner," and Rule 2(c)(2) requires that the petition "state the facts supporting each ground." The petitioner has asked the court to stay the proceedings so that he can exhaust a claim that he did *not* raise in the petition he filed almost two and a half years ago. The petitioner proposes that if the state court denies his post-conviction motion, he will amend his federal *habeas* petition to add the claim he planned to raise in that motion.

There are problems with this request. First, a petitioner is not automatically entitled to amend a *habeas* petition once the respondent has answered or otherwise responded. Once the respondent has answered or otherwise responded, Federal Rule of Civil Procedure 15(a)(2) says that a party may amend "only with the opposing party's written consent or the court's leave." The court does not know whether it would grant the petitioner leave to amend his petition years after he filed it, particularly when the petitioner has not explained what "new evidence" he believes he has or why he could not have presented any arguments based on that evidence in his original *habeas* petition.

Second, under 28 U.S.C. §2244(d)(1)(A), a petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" by which to file a

federal *habeas* petition. On May 19, 2020, the Wisconsin Supreme Court denied the petitioner's petition for review. Under Rule 13 of the Rules of the Supreme Court of the United States, the petitioner had ninety days from the date on which the Wisconsin Supreme Court denied his petition to petition for *certiorari* in the United States Supreme Court—that is, until August 17, 2020. As the respondent points out, however, due to the COVID-19 pandemic, the Supreme Court extended time the time to file a petition for *certiorari* from ninety days to 150 days. See Supreme Court March 19, 2020 Order (available at https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf). Consequently, the time for the petitioner to seek review in the United Supreme Court expired on October 16, 2020. Because the time for seeking final review expired on October 16, 2020, the petitioner had one year from that date by which to file his federal *habeas* petition (until October 16, 2021) and to include in it all grounds for relief available to him.

The petitioner timely filed his original federal *habeas* petition on May 26, 2021, just under five months before the one-year deadline under §2244 expired, so the single ground raised in that petition was timely filed. The petitioner filed his amended petition on July 28, 2022—about eight months *after* the one-year limitation period had expired. The court will come back to the question of whether the three new grounds raised in that amendment were timely filed. But again, for the purposes of the motion to stay, the petitioner did not ask the court to stay the federal *habeas* proceedings so that he could go back to state court and exhaust claims from his July 28, 2022 amended petition. He asked to go back to state court to file a "new evidence" motion. He did not identify that new evidence or explain when he discovered it, but

whatever his "new evidence" claim might be, he did not raise it before the October 16, 2021, one-year deadline.

The one-year deadline is a strict one, designed to "advance the finality of criminal convictions," Mayle v. Felix, 545 U.S. 644, 662 (2005), and a petitioner cannot get around it by filing amendments to add new claims that otherwise are untimely. A party may amend the petition only if the amendment "relates back" to the original pleading. Fed. R. Civ. P. 15(c). For an amendment to "relate back" to the original *habeas* petition, it must do more than involve the same trial, conviction or sentence as challenged in the original *habeas* petition. Mayle, 545 U.S. at 662. The amendment must state claims "that are tied to a common core of operative facts." Id. at 664. The court has no way of knowing whether the "new evidence" that the petitioner references is tied to a common core of the operative facts involved in the original petition, because the petitioner did not provide any information to allow the court to make that determination.

Finally, although §2244(d)(1)(D) extends the limitation period for filing a federal *habeas* petition until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," the petitioner has not argued that he was unable to discover this "new evidence" until after the one-year limitation period expired, or explained why he could not have discovered it. The court has no basis for applying the longer limitation period from §2244(d)(1)(D).

The court will deny the motion to stay. If the petitioner someday files a post-conviction motion in state court that involves new evidence and is not successful on that motion, he may petition the Seventh Circuit Court of

19

Appeals to give him the opportunity to file a second or successive §2254 *habeas* petition.

## III. Motion to Dismiss (Dkt. No. 22)

### A. The respondent's arguments[6]

The respondent argues that the court should dismiss Grounds One and Two of the petition because they are not cognizable on federal *habeas* review. Dkt. No. 23 at 2. The respondent maintains the court is barred from reviewing Grounds One and Two—the Fourth Amendment claims—because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court as evidenced by his motion to suppress, motion to suppress hearing and appeal of the circuit court's denial of his suppression motion. Id. at 2-3 (citing Ben-Yisrayl v. Buss, 540 F.3d 542, 552 (7th Cir. 2008)).

As to Grounds Three and Four, the respondent argues that the court should dismiss those claims as untimely because they were raised in the July 17, 2022 amended petition (received by the court on July 28, 2022) after the one-year limitation period expired and do not relate back in the claims in his original petition. Id. at 3-6.

_____

[6] The petitioner did not respond to the motion to dismiss, possibly because he did not receive it. The court received the respondent's motion on November 22, 2022, after the state court docket indicates the petitioner had been moved to a supervised living facility in Stanley, Wisconsin. But, as the court indicated in n.1, the petitioner did not advise this court of his change of address, so the respondent likely sent the motion to the Chippewa Valley Correctional Treatment Facility after the petitioner had been transferred out of that facility. In its May 24, 2022 screening order, the court advised the petitioner that it was his responsibility to notify the court promptly if he was transferred to another facility or released. Dkt. No. 7 at 6. It also advised the petitioner that his failure to keep the court advised of his address might result in the court dismissing his case without further notice. Id.

20

In the alternative, the respondent argues that the court should dismiss the amended petition under Fed. R. Civ. P. 41(b) for failure to comply with a court order. Id. at 7. The respondent argues that although the court reopened the petitioner's case based on his insistence that he put his amended petition in the correctional facility's mail sometime before the July 22, 2022 deadline the court set (Dkt. No. 9), the evidence shows that the petitioner did not submit the amended petition until July 25, 2022. Id. (citing Boehm Decl., Dkt. No. 24 at ¶3, Ex. 1000). The respondent asserts that the petitioner's failure to comply with the deadline and material misrepresentation that he attempted to do so warrants dismissal. Id. at 8.

B.    Analysis

    1.    *Grounds One and Two*

Generally, a court cannot grant a petitioner *habeas* relief on a Fourth Amendment claim relating to his underlying conviction. See Stone v. Powell, 428 U.S. 465, 493 (1976). A litigant may pursue a Fourth Amendment claim on collateral attack *only* if he can show that he was not provided a full and fair opportunity to litigate that claim in the underlying criminal proceedings. Hampton v. Wyant, 296 F. 3d 560, 562 (7th Cir. 2002). A defendant has had a full and fair opportunity to litigate a Fourth Amendment claim when "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." Miranda v. Leibach, 394 F.3d 984, 997 (7th Cir. 2005) (citing Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir. 1992)).

The role of a federal court on *habeas* review is "not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself]

Case 2:21-cv-00657-PP   Filed 09/19/23   Page 21 of 29   Document 25

that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." Monroe v. Davis, 712 F.3d 1106, 1114 (7th Cir. 2013). "It takes more than an error in the state court's analysis to surmount the *Stone* bar to collateral relief . . . ." Id. (citing Hampton, 296 F.3d at 563-64; Leibach, 394 F.3d at 998). Only if the error "betray[s] an unwillingness on the part of the [state] judiciary to treat [the petitioner's] claim honestly and fairly" will that error provide a basis for a merits review of a Fourth Amendment claim in a federal *habeas* case. Id.

As to Ground One—the petitioner's allegation that the warrantless search of the duffel bag violated his Fourth Amendment rights and that he was entitled to an evidentiary hearing regarding the circumstances of that search— the record demonstrates that the petitioner had a full and fair opportunity to litigate that claim. The petitioner was represented by counsel throughout the circuit court proceedings. He clearly advised the court in his February 7, 2014 "Motion to Suppress the Fruits of a Warrantless Search" (Dkt. No. 23-1 at 1-3) of the basis of his claim and reiterated that basis in his reply brief in support of the motion (Id. at 18-24). The state court held a hearing on that motion and defense counsel made extensive arguments during that hearing. Id. at 25-40. At the end of that hearing, the circuit court considered the totality of the circumstances and found that the fire and safety risks posed by the chemical lab constituted exigent circumstances, which justified the officers in searching the bag without a warrant. The court applied constitutional law to the facts—it considered the defendant's standing argument, the exigent circumstances doctrine, caselaw cited by the parties and the community caretaking function doctrine. Id. at 35-40.

22

Not only did the petitioner have a full and fair opportunity to litigate the search of the duffel bag (and the denial of an evidentiary hearing about the facts leading to that search) at the circuit court level, but he had a full and fair opportunity to litigate it at the court of appeals level. Although his appellate counsel filed a no-merit brief, the appellate court rejected it, and the petitioner had the opportunity to challenge the circuit court's decision regarding the search of the duffel bag. The court of appeals agreed that the warrantless search of the duffel bag was justified by the emergency exception to a warrantless search. In reaching its conclusion, the court of appeals court cited Kraimer, 99 Wis. 2d. at 314, a Wisconsin Supreme Court case establishing the emergency exception to the Fourth Amendment's warrant requirement. The court also referenced Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006), in which the United States Supreme Court reiterated a prior ruling in Michigan v. Tyler, 436 U.S. 499 (1978), that "law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause." Stuart, 547 U.S. at 403.

The court cannot find that the state courts' application of the applicable law to the facts of the petitioner's suppression motion was unreasonable or intellectually dishonest, but more to the point: regardless of whether the court agrees with the state court's findings, the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in Ground One, which means that this court is barred from reviewing the merits of his challenge to the warrantless search of the duffel bag and the denial of an evidentiary hearing relating to that search.

As to Ground Two, while it appears from the trial court record that the petitioner likely had a full and fair opportunity to litigate his Franks/Mann

23

motion, the court does not reach that analysis because the petitioner failed to exhaust that claim. Ground Two argues that "the affidavit in support of the search warrant included misleading facts, which if not included, would not have established probable cause to issue a search warrant." Dkt. No. 12 at 7. The record shows, however, that the petitioner did not raise this claim in the court of appeals or to the Wisconsin Supreme Court.

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress imposed limitations on a federal court's ability to grant *habeas* relief. 28 U.S.C. §§2241-2256. One such limitation is the exhaustion requirement in 28 U.S.C. §2254(b). This part of the statute forbids a district court from granting *habeas* relief unless the petitioner has fairly presented the state courts with one full opportunity to resolve the petitioner's constitutional issues. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "full opportunity" "includes presenting the claims to the state's highest court in a petition for discretionary review." Hicks v. Hepp, 871 F.3d 513, 530 (7th Cir. 2017) (citing Boerckel, 526 U.S. at 845). A claim is not "exhausted" if the petitioner still "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c). The only exception to the exhaustion requirement is when "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. §§2254(b)(1)(B)(i)-(ii).

The petitioner presented his Franks/Mann motion in the circuit court. After the circuit court denied the motion, however, the petitioner did not argue it in his appeal (Dkt. No. 23-2 at 1-18) and did not raise it in his petition for review before the Wisconsin Supreme Court (Dkt. No. 23-4 at 1-16). Where a petitioner has not fairly presented his claims to the state courts, the federal

24

court considers the claims procedurally defaulted and does not address their merits. Hicks, 871 F.3d at 531 (citing Lombardo v. United States, 860 F.3d 547, 555 (7th Cir. 2017)). If a petitioner procedurally defaults on a claim, a federal *habeas* court generally cannot review that claim. Woodford v. Ngo, 548 U.S. 81, 93 (2006) (citing Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 744-51 (1991)). A procedural default bars a federal court from granting *habeas* relief unless a petitioner demonstrates cause for the default and resulting prejudice, or that a miscarriage of justice would result if the court did not address his claim on the merits. Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).

The petitioner procedurally on his Ground Two claim because he did not raise it in his direct appeal or in his petition for review in the Wisconsin Supreme Court. The petitioner has not demonstrated cause for the default and resulting prejudice or that a miscarriage of justice would result if the court did not address the claim on the merits. The court cannot review the merits of the Ground Two claim that the circuit court erred in its ruling on his Franks/Mann motion.

### 2. *Grounds Three and Four*

The respondent concedes that the petitioner timely filed his original petition but argues that the petitioner raised Grounds Three and Four for the first time in amended petition, which he filed after the statute of limitations had expired. Dkt. No. 23 at 3-4. The respondent argues that the claims do not relate back to the claims in the original petition, and thus that the court must dismiss Grounds Three and Four as time-barred. Id. at 6.

As discussed to some extent above, §2244(d)(1) requires a petitioner to file a federal *habeas* petition within one year of the latest of four dates: (A) the

date on which the judgment became final "by the conclusion of direct review or the expiration of the time for seeking such review;" (B) the date on which any impediment to filing the petition "created by State action in violation of the Constitution or laws of the United States" is removed, if that state action prevented the petitioner from filing his petition; (C) where the Supreme Court has newly recognized a constitutional right and made it retroactively applicable to cases on appellate review, the date on which that newly recognized right was initially recognized by the Supreme Court; or (D) the date on which the facts supporting the claims could have been discovered "through the exercise of due diligence." "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. §2244(d)(2).

The petitioner has not argued that subsections (B)-(D) are applicable and the court has no reason to believe that they are. So under §2244(d)(1)(A), the one-year limitation period to file §2254 began to run from the date on which the petitioner's judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. As the court explained above, given the U.S. Supreme Court's extension of the deadline for filing petitions for *certiorari*, the petitioner had until October 16, 2021 by which to file any claims he wanted to present in a federal *habeas* petition.

The petitioner timely filed his original petition on May 26, 2021. Dkt. No. 1. But as the court has noted, that petition included only the single, Fourth Amendment claim regarding the warrantless search of the duffel bag. The petitioner did not raise Ground Three (that the court relied on inaccurate information at sentencing) or Ground Four (excessive sentencing unfit for

courts) until he filed his amended petition on July 28, 2022—months after the one-year deadline. This means that the claims in Grounds Three and Four are time-barred unless they relate back to the initial petition. Mayle, 545 U.S. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").[7]

The respondent argues that the amended petition does not relate back to the claims in the original petition because the original petition concerned an alleged illegal search, while Grounds Three and Four are based on the circuit court's alleged errors at sentencing. Dkt. No. 23 at 6. The Supreme Court has explained that an amended petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ both in time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. Applying this principle, the Mayle Court held that a petitioner's Fifth Amendment claim based on the admission of his pretrial statements to police did not relate back to his Sixth Amendment claim based on the admission of recorded testimony at his trial because the claims depended on events separate in both "time and type." Id. at 657. The Court emphasized that that an amended petition did not relate back simply because it "relate[d] to the same trial, conviction, or sentence as a timely filed claim." Id. at 662.

Applying the "time and type" analysis to the petitioner's claims leads to the same conclusion here—Grounds Three and Four do not relate back to the claim in the original petition. The original petition focused solely on the petitioner's claim that the circuit court erred in denying his motion to suppress

---

[7] Although the respondent did not make the argument, it appears that in addition to being unexhausted, the claim in Ground Two also is time-barred. The petitioner did not discuss the Franks/Mann motion in the original petition.

the fruits of the warrantless search of the duffel bag and in refusing to hold an evidentiary hearing. That ground concerned pretrial conduct related to the evidence used to charge the petitioner. Grounds Three and Four focus on whether the sentencing court relied on inaccurate information during the sentencing hearing and whether it imposed an excessive sentence. The petitioner contends that the circuit court incorrectly found that he had lied about the source of money seized by the government during the investigation. Dkt. No. 12 at 8. He also references a disciplinary proceeding from 2019 in which the Wisconsin Supreme Court held that Racine County Judge Michael J. Piontek (the judge who sentenced the petitioner) should be suspended for judicial misconduct. Id. at 9 (citing Wisconsin Judicial Commission v. Piontek, 2019 WI 51 (Wis. 2019)). While Grounds One and Two challenge rulings on pretrial motions concerning evidence collected during the police investigation, Grounds Three and Four concern alleged errors at the petitioner's sentencing and a disciplinary proceeding involving the sentencing judge that took place more than four years after the petitioner's sentencing. Because the events underlying Grounds Three and Four raised in the amended complaint are separate in both "time and type" from the events underlying the single ground in the original petition, they do not share a "common core of operative facts." Mayle, 545 U.S. at 657. Rule 15(c)'s relation-back provision does not provide the petitioner an avenue to avoid the one-year time bar as to Grounds Three and Four. The court must dismiss both claims as time-barred.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing

28

of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would debate (or for that matter, agree that) the petition should have been resolve in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because it concludes that no reasonable jurist could debate the court's decision that the petitioner is not entitled to relief under 28 U.S.C. §2254.

## V. Conclusion

The court **DIRECTS** the Clerk of Court to update to docket to reflect that Christine Suter is the correct respondent.

The court **DENIES** the petitioner's motion to stay. Dkt. No. 20.

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 22.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 19th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

29